# 15-56328

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DEC 0 4 2015

FILED
DOCKETED      DATE      INITIAL

| | | |
|---|---|---|
| ROBERT JAFFE, M.D., | ) | (9th Cir. Case No. 12-55664 |
| | ) | U.S. District Court No. CV-15-1018-DSF) |
| | ) | |
| Appellant, | ) | **APPELLANT'S OPENING BRIEF** |
| | ) | **APPEALING THE DISTRICT COURT'S** |
| JOHN G. ROBERTS, JR., Chief Justice, | ) | **ORDER DATED JULY 28, 2015** |
| U.S. Supreme Court; ANTONIA SCALIA, | ) | **GRANTING DISMISSAL OF** |
| Associate Justice; ANTHONY M. | ) | **APPELLANT'S COMPLAINT; THE** |
| KENNEDY, Associate Justice; CLARENCE | ) | **DISTRICT COURT'S JUDGMENT** |
| THOMAS, Associate Justice; RUTH | ) | **DATED JULY 28, 2015; AND THE** |
| BADER GINSBURG, Associate Justice; | ) | **AND THE DISTRICT COURT'S** |
| STEPHEN G. BREYER, Associate | ) | **DENIAL OF PLAINTIFF'S MOTION** |
| Justice; SAMUEL ANTHONY ALITO, Jr., | ) | **FOR RECONSIDERATION DATED** |
| Associate Justice; SONIA SOTOMAYOR, | ) | **AUGUST 12, 2015** |
| Associate Justice; ELENA KAGAN, | ) | |
| Associate Justice, et al., | ) | |
| Respondents. | ) | |

### Appeal from the United States District Court

### For the Central District of California, the Honorable Dale S. Fischer

### APPELLANT'S OPENING BRIEF

Plaintiff - Appellant in Pro Se
ROBERT J. JAFFE, M.D.
22139 Burbank Boulevard, Unit 5
Woodland Hills, CA 91367
Telephone: (818) 713-1378
Facsimile: (818) 713-1378

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| ROBERT JAFFE, M.D., | ) | (9th Cir. Case No. 12-55664 |
| | ) | U.S. District Court No. CV-15-1018-DSF) |
| | ) | |
| Appellant, | ) | **APPELLANT'S OPENING BRIEF** |
| | ) | **APPEALING THE DISTRICT COURT'S** |
| JOHN G. ROBERTS, JR., Chief Justice, | ) | **ORDER DATED JULY 28, 2015** |
| U.S. Supreme Court; ANTONIA SCALIA, | ) | **GRANTING DISMISSAL OF** |
| Associate Justice; ANTHONY M. | ) | **APPELLANT'S COMPLAINT; THE** |
| KENNEDY, Associate Justice; CLARENCE | ) | **DISTRICT COURT'S JUDGMENT** |
| THOMAS, Associate Justice; RUTH | ) | **DATED JULY 28, 2015; AND THE** |
| BADER GINSBURG, Associate Justice; | ) | **AND THE DISTRICT COURT'S** |
| STEPHEN G. BREYER, Associate | ) | **DENIAL OF PLAINTIFF'S MOTION** |
| Justice; SAMUEL ANTHONY ALITO, Jr., | ) | **FOR RECONSIDERATION DATED** |
| Associate Justice; SONIA SOTOMAYOR, | ) | **AUGUST 12, 2015** |
| Associate Justice; ELENA KAGAN, | ) | |
| Associate Justice, et al., | ) | |
| Respondents. | ) | |
| | ) | |

## Appeal from the United States District Court

### For the Central District of California, the Honorable Dale S. Fischer

---

## APPELLANT'S OPENING BRIEF

---

Plaintiff - Appellant in Pro Se
ROBERT J. JAFFE, M.D.
22139 Burbank Boulevard, Unit 5
Woodland Hills, CA 91367
Telephone: (818) 713-1378
Facsimile: (818) 713-1378

## I. JURISDICTION

Jurisdiction of this court arises under 28 U.S.C. §1291.

The district court had jurisdiction under 28 U.S.C. §1343.

The district court had jurisdiction of Appellant's FRCP Rule 60(b) Complaint to set aside the judgment for fraud on the court, under FRCP Rule 60(b)(4) and (d). (See also *Pumphrey v. K. W. Thompson Tool Co.*, 62 F.3d 1128, 1130 (9th Cir.1995.)

See also *Marshall v. Holmes,* 141 U.S. 589-595 (1891) and *Hazel-Atlas Glass*, 322 U.S. at 244–45 (holding, "the federal court has inherent powers to breach finality of a judgment procured by on fraud upon the court."

Appellant appeals from: (1) The district court's Order dated July 28, 2015 granting dismissal of appellant's Complaint; (2) the District's Court's Judgment dated July 28, 2015 Dismissing appellant's Complaint and Action with Prejudice; and (3) the District Court's Denial of Appellant's Motion for Reconsideration dated August 12, 2015.

## II. STATMENT OF CASE

The Fourteenth Amendment to the Constitution guarantees due process in the deprivation of a property right.

U.S. Supreme Court precedent holds that hospital privileges, when already-licensed, are a property right. (See <u>Board of Regents v. Roth,</u> 408 U.S.

564 (1972), ("where state law creates a property interest in hospital privileges, all physicians are entitled to due process in decisions affecting hospital decisions".)

See California Business & Professions 809, et seq. documenting that California state created a property interest in hospital privileges prohibiting foreclosure without due process, which the Hospital incorporated into its bylaws.

See also Board of Regents v. Roth, 408 U.S. 564 (1972) and Lowe, supra at 323: ("The already-licensed, have a vested property interest in the license, which forecloses denial without due process...When a hospital grants a physician hospital privileges, and undertakes explicitly or implicitly not to revoke these privileges without appropriate process, a protected property interest is created.")

In 1994, after 17 years as attending physician with Kaiser Foundation Hospital and partner with the Hospital's Medical Group, the Hospital began a series of fraudulent peer review activities and hearings without due process and voted to remove appellant's hospital privileges.

Per California Business & Professions Code § 809, et. seq., [1] and federal

---

[1]  California Business & Professions Code 809.2:  " If a licentiate timely requests a hearing concerning a final proposed action for which a report is required to be filed under Section 805, the following shall apply:

(a) The hearing shall be held... before a trier of fact, which shall be an arbitrator or arbitrators selected by a process mutually acceptable to the licentiate and the peer review body, or before a panel of unbiased individuals who shall gain no direct financial benefit from the outcome, who have not acted as an accuser, investigator, factfinder, or initial decisionmaker in the same matter, and which shall include, where feasible, an individual practicing the same specialty as the licensee.

statute, 42 U.S.C. § 11112, whenever a hospital suspends or terminates a

physician's hospital privileges, the hospital must afford hearings held in strict

accordance with statutory law and due process, to allow the physician to appeal the

suspension or termination.

The Hospital conducted a peer review process and three hearings per B & P

Code 809, et seq (which the Hospital incorporated into its bylaws): (1) the

Informal hearing; (2) the Arbitration hearing; and (3) the Hospital's Appellate

Review Board Hearing. Prevailing at any one of these hearings would have

reversed the Hospital's termination.

The hospital violated due process and statutory law during its peer review

process all three of its hearings. (Compl. ¶36-48.)

Appellant filed Writ of Mandamus in state superior court on December 16,

2001 to overturn the hospital's decision setting forth all the due process violations

that occurred during the hearings. the showing of proof that the charges were not

---

(b) If a hearing officer is selected to preside at a hearing held before a panel, the hearing officer shall gain no direct financial benefit from the outcome…shall not act as a prosecuting officer or advocate, and shall not be entitled to vote.

(c) The licentiate shall have the right to a reasonable opportunity to voir dire the panel members and any hearing officer, and the right to challenge the impartiality of any member or hearing officer….

(d) The licentiate shall have the right to inspect and copy at the licentiate's expense any documentary information relevant to the charges which the peer review body has in its possession or under its control, as soon as practicable after the receipt of the licentiate' s request for a hearing. . . . The failure by either party to provide access to this information at least 30 days before the hearing shall constitute good cause for a continuance…."

supported by evidence at the hearings and that the California Medical Board conducted its own investigation and found appellant to be within the standard of care on all charges brought forth by the hospital. (See Exhibits A and B.)

Superior Court Judge Yaffe, however through judicial acts of fraud on the court set forth with specificity herein and in appellant's District Court Compl. ¶ 66-108, *upheld* the hospital's decision without review of the hospital's due process violations and without review of the medical charges. The Judge devised a false premise in his opinion to "waive" and not address the statutory and due process violations, and addressed only one of the charges in his opinion and changed the charge in his Opinion, to a charge stated in testimony was not a charge at all.

In upholding the hospital's decision *without review* of the *statutory and due process violations or the medical charges*, the state court violated the required standard of review (CCP §1094.5(b) and (d)), and U.S. Supreme Court precedent (Potvin v Metropolitan Life etc. (2000) 22 C.4th 1059, 1066 and Pinsker II, *supra*, 12 Cal.3d p.550) (holding ,"a hospital's decision for removal of privileges can only be upheld if is found to be both substantively rational and procedurally fair").

Appellant's instant 2014 District Court Complaint documents that he previously filed two independent actions in the district court to set aside the state court judgment for acts of judicial fraud on the court, naming:

(1) the *state superior and appellate court justices* upheld the hospital's

decision *through judicial acts of fraud on the court <u>and</u> without review the*
*statutory and due process violations <u>or</u> the medical charges*, violating the courts'
required standard of review under CCP § 1094.5(b) and (d), and Supreme Court
Precedent, (*Potvin, supra* (2000) 22 C.4th 1059, 1066 and *Pinsker II, supra,* 12
Cal.3d p.550), holding "a hospital's decision for removal of privileges can only be
upheld if is found to be **both** substantively rational **and** procedurally fair.")
(Compl. ¶ 66-108);

(2) the *federal district and appellate court justices* through judicial acts of
fraud upon the court, *also* upheld the state court decision and *summarily dismissed*
and then *summarily affirming* the dismissal of appellant's complaint for relief for
judgment for fraud on the court, also *without review of the hospital's statutory and*
*due process violations <u>or</u> the medical charges,* violating its required standard of
review and Supreme Court precedent, *(Potvin, supra.* (2000) 22 C.4th 1059, 1066
and *Pinsker II, supra*, 12 Cal.3d p.550). (Compl. ¶ 9-80.)

Furthermore, the federal district and appellate courts *summarily dismissed*
*and summary affirmed the summary dismissal* of appellant's <u>FRCP Rule 60(b)</u>
<u>district court complaints and motions for relief from judgment fraud on the court</u> -
<u>without review of the fraud on the court allegations</u> (violating the required standard
of review *for fraud on the court actions* under U.S. Supreme Court precedent,
<u>Hazel-Atlas</u>, 322 U.S. at 250-51 and <u>U.S. v. Throckmorton</u>, <u>98 U.S. 61</u>, (holding

that actions for relief from judgment procured by fraud on the court must be tried in open court and that the fraud on the court allegations must receive the consideration of the court): See Hazel-Atlas, 322 U.S. at 250-51:

> "This is a suit in equity in the District Court to set aside or amend the judgment. Such a proceeding is required to be settled by federal law and would be tried, as it should be, in open court....in a trial which has presented the claims of the parties and where they have received the consideration of the court." (Emphasis added.)

Furthermore, Appellants' Complaint (¶80-101) documents that at each court to which appellant applied for justice, the justices of each court violated the standard of review and failed to perform their judicial function in accordance within the definition "judicial fraud on the Court". (See Bulloch v. United States, 763 F.2d 1115 (10th Cir.1985) (defining judicial fraud on the court: "...where the judge has not performed his judicial function...so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.")

Furthermore, summary dismissal of appellant's **pro se** complaint without review of the fraud on the court allegations - the very allegations that would have entitled plaintiff to relief, deprived appellant of his right to "prove any set of facts that would entitle him to relief", under the standard set forth in *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, 439 U.S. 970 (1978) (holding, "[A] complaint, especially a **pro se** complaint, should not be dismissed summarily

unless 'it appears beyond doubt that the plaintiff <u>can prove no set of facts in support of his claim which would entitle him to relief</u>".

Furthermore the federal and appellate courts' summary dismissal and summary affirmance of a "complaint for relief from judgment for fraud on the court", without review of the *statutory and due process violations, the medical charges or appellant's fraud on the court allegations* <u>constitutes the denial of an evidentiary hearing on the subject matter of the suit</u>. (*U.S. v. Throckmorton*, <u>98 U.S. 61</u>, 25 L.Ed. 93 holding:

> "The cases where such relief has been granted are those in which, by <u>fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has never been a real contest before the court of the subject matter of the suit.</u>"

Furthermore, <u>*United States v. Alex*, 81-6010 holds that summary affirmance</u> <u>is prohibited where the Plaintiff has been denied an evidentiary hearing.</u>

In 2014 appellate sought his right to a hearing from the U.S. Supreme Court, but again, (though acts of judicial fraud upon the court per *Bulloch*, supra), was denied an evidentiary hearing. Appellant petitioned the U.S. Supreme Court for a rehearing, denied on May 5, 2014.

Appellant**'s** Petition for Writ of Certiorari requested U.S. Supreme Court to <u>exercise its supervisory power over the lower courts</u>, as the lower courts had **let stand the state superior court's decision (which upheld the hospital's**

8

**termination of appellants' hospital privileges - a property right, ) - without**

**review of the hospital's medical charges, without review of the hospital's due**

**process violations, and without review of the fraud on the court allegations,**

contrary to the courts' required review under U.S. Supreme Court precedent and

per U.S. Supreme Court FRCP rules of law.  (Compl. ¶19-25.)

Appellant's instant district court Complaint (¶19-25), states that in failing to

exercise their supervisory power and in denying Appellants' Petition for Writ of

Certiorari, the U.S. Supreme Court violated federal law which holds discretion has

no place for operation when denial turns on the validity of the judgment,  (See

Fisher v. Amaraneni, 565 So. 2d 84 (Ala. 1990).   Therein the Supreme Court of

Alabama reversed a denial of the granting of a Rule 60(b)4 motion, referencing its

own ruling in Smith v. Clark, 466 S.O. 2d 138, 141 (Ala. 1985) holding:

> "Rule 60(b) (4) motions involve a different standard of review than the
> other Rule 60(b) subsections..."[w]h en the...Denial turns on the **validity of
> the judgment, discretion has no place for operation.  If the judgment is
> void it must be set aside".** Fisher v. Amaraneni, 565 So. 2d 84 (Ala.
> 1990).  (Emphasis added.)

All the courts have "failed to perform their judicial function" under the

definition of "judicial fraud on the court" under *Bulloch v. United States*, 763 f.2d

1115 (10th cir.1985), holding:

> "Fraud on the court ... is fraud which is directed to the judicial machinery
> itself.... H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co., 536 F.2d

1115 (6thCir). It is thus fraud where . . . <u>judge has not performed his judicial function--thus where the impartial functions of the court have been directly corrupted. "The cases where such relief has been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has never been a real contest before the court of the subject matter of the suit."</u> *U.S. v. Throckmorton,* 98 U.S. 61, 25 L. Ed. 93." (Emphasis added.)

## III. STANDARD OF APPELLATE REVIEW.

This Court reviews *de novo,* as a matter of law, the district court's dismissal for want of subject matter jurisdiction. *Tilman v. Resolution Trust Corp.,* 37 F.3d 1032, 1034 (4th Cir. 1994).

This Court reviews the sufficiency of a complaint dismissed for want of subject matter jurisdiction by accepting liberally all facts plead as true, that would entitle the appellant to relief. *Conley v. Gibson,* 355 U.S. 41, 45-56 (1957); *Coakley & Williams, Inc. v. Shatterproof Glass Corp.,* 706 F.2d 456, 457 (4th Cir. 1983).

This Court reviews the sufficiency of a <u>pro se</u> Appellant's complaint by liberal construction of the pleadings. *Haines v. Kerner,* 404 U.S. 519, 521 (1972).

A federal complaint filed by a <u>pro se</u> plaintiff may not be summarily dismissed unless there is doubt that no facts could be proved in support of claims entitling relief. (*Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978).

The federal court has inherent powers to breach finality of a judgment procured by on fraud upon the court, *Marshall v. Holmes* 141 U.S. 589-595 (1891), *Hazel-Atlas Glass,* 322 U.S. at 244–45. "It has long been the law that a

10

plaintiff in federal court can seek to set aside a state court judgment obtained

through extrinsic fraud." *Kougasian v. TMSL, Inc.* 359 F.3d 1136, 1139 (9th Cir.

2000)).

Extrinsic fraud is a basis for setting aside an earlier judgment. *Zamora v.*

*Clayborn Contracting Group, Inc.*, 47 P.3d 1056, 1063 (Cal. 2002). *United States*

*v. Throckmorton*, 98 U.S. 61, 25 L.Ed. 93 (1878) stands clearly for the proposition

that extrinsic fraud, that is, fraud that was not the subject of the litigation, that

infects the actual judicial process, is grounds to set aside a judgment as procured

by fraud. "*Hazel-Atlas* is to be read as an expansion of the limits set by

*Throckmorton* in attacking judgments generally...Hazel-Atlas allows a judgment

to be attacked on the basis of intrinsic fraud that results from corrupt conduct by

officers of the court." *Browning*, 826 F.2d at 344.

Adams Golf, Inc. Sec.Litig, 381 F.3d 267, 273 (3d Cir. 2004) sets forth a

demanding standard for independent actions alleging fraud upon the court

requiring, the elements as in appellant's case: (1) an intentional fraud; (2) by an

officer of the court; (3) which is directed at the court itself; and (4) that in fact

deceives the court.

The 7th Circuit holds "a decision produced by fraud upon the court is not in

essence a decision at all, and never becomes final." The U.S. Supreme Court has

consistently held that a void order is void at all times, cannot be made valid by any

11

judge, nor does it gain validity by the passage of time. The order is void *ab initio*.
*Valley v. Northern Fire & Marine Co.*, 254 U.S. 348, 41 S. Ct. 116, (1920).

Since "fraud upon the court" vitiates the entire case, all orders from that court, or any subsequent court, including a mandate, are void, as none of the courts held subject-matter jurisdiction. No court has the lawful authority to validate a void order, *U.S. v. Throckmorton,* 98 U.S. 61, 25 L.Ed. 93 (1878); *Hazel-Atlas supra,* 322 U.S. 238, *Root Refining Co. v. Universal Oil Products Co.,* 169 F.2d 514 (1948). All orders based on void orders are themselves void. *Austin v. Smith*, 312 F.2d 337, 343 (1962) ("If the underlying judgment is void, the judgment based upon it is also void".)

## Rooker-Feldman Doctrine-Kougasain Exception Standard Of Review:

"If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal court.')…A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party…. Extrinsic fraud on a court is, by definition, not an error by that court….*Rooker-Feldman* therefore does **not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud.**" *Kougasian v. TMSL, Inc.* 359 F.3d 1136-1139 (9th Cir. 2000).

"…If issues presented in a federal suit are "inextricably intertwined" with issues presented in a forbidden de facto appeal from a state court decision, Rooker-Feldman dictates that those intertwined issues may not be litigated…As we explained in Noel v. Hall, "inextricably intertwined" has a narrow and specialized meaning in the Rooker-Feldman doctrine. See

12

Noel, 341 F.3d 1166.  If a federal plaintiff has brought a de facto appeal from a state court decision—alleging legal <u>error</u> by the state court and seeking relief from the state court's judgment—he or she is barred by Rooker-Feldman…In this case, Kougasian has asserted <u>no legal error</u> by the state court.  <u>She is therefore not bringing a de facto appeal under Rooker-Feldman.  Because she is not bringing a forbidden de facto appeal, there are no issues with which the issues in her federal claims are "inextricably intertwined" within the meaning of</u> *Rooker-Feldman*.  (*Rooker-Feldman v. Fidelity Trust Co.* 263 U.S. 413 (1923).  (Emphasis added.)

In *Barrow v. Hunton*, 99 U.S. (9 Otto), the Supreme Court distinguished between <u>errors</u> by the state court, which could not be reviewed in federal circuit court, and <u>fraud on the state court</u>, which is a basis for an independent suit in circuit court.

## IV.  BACKGROUND

Appellant is a Board Certified Internist and was an attending physician with Kaiser Foundation Hospital and a partner with the Hospital's Medical Group for 17 years from 1977 to 1994.

As outlined in Appellant's instant District Court Complaint (¶ 33-48),  on August 1, 1994, the Hospital through fraudulent means voted to terminate Appellant's hospital privileges, violating due process and federal and statutory law throughout the peer review process and during all three of the hospital's hearings, set out, but not all inclusive, below:

## V.  STATUTORY AND DUE PROCESS VIOLATIONS DURING ALL THREE OF THE HOSPITAL'S HEARINGS:

13

A.  **Hospital's First Hearing:**

During this hearing the Hospital violated statutory law, California

Business & Professions Code 809.2 and due process by ***not providing appellant***

***with all of the medical records that formed the basis for the Hospital's charges.***

(See testimony of Kaiser Internist, Dr. McKenzie, Appellant's representative at the

Hospital's first hearing.   (See Exhibit D):

> "First of all, there is a procedural issue to be addressed.  As Dr. Jaffe's
> representative, <u>I requested all the 19 medical records listed in the report of
> the investigative subcommittee. I was told I would receive them on
> Thursday last.  Some records came, but more were promised for early Friday
> afternoon. Late Friday afternoon, more records were delivered, but many
> were incomplete or missing and were to be delivered Saturday.  When I left
> my office Saturday at 5:15, seven of the 19 were still incomplete or missing,
> 5 of which I couldn't review at all.</u>
>
> <u>In the interest of due process, and Dr. Jaffe's right to adequate
> representation, we have a choice, we can delete those 5 cases from
> consideration; or we can reinstate Dr. Jaffe's hospital privileges forthwith,
> until the executive committee and hospital administration feel fully prepared
> for this type of proceeding.  Dr Jaffe is happy to accept either approach."</u>

**Despite appellant's request for a continuance until the missing records**

**were provided, the Hospital insisted the hearing go forward and then ruled**

**that very day on all the charges, including the charges of which the records**

**had not been provided, and filed its 805 report to the California Medical**

**Board.**

Dr. McKenzie's testimony continued (Exhibit D):

14

"I found the reports [against Plaintiff] to be "extremely flawed"... "The bias concern has been born out...when I read the Subcommittee report "it seemed like a litany of horrors, and I was sure I would find a smoking gun...maybe even an arsenal. I didn't."

"...It's one thing to say "that's not what I do, and quite another to say "that's the wrong thing to do...You all have to hear me out and bear with me because you all have self-interest in this report, and I know you will have difficulty admitting how badly flawed it is." . "I certainly didn't think this was the type of presentation I would make. When I read the report, I thought Dr. Jaffe would have no option but to beg for forgiveness. But the facts demanded this accounting, even though I realize injecting myself into this conflict with administration could potentially involve personal and professional costs to me...."

Dr. McKenzie proved, of the records for which he was provided, that the

hospitals charges were of no merit.

2. The Hospital also violated Cal. Business & Professions Code § 809.2

by holding the hearing before the same panel of individuals who had acted as

the investigators, fact-finders and initial decision makers.

3. The Hospital **withheld from the panel the fact that proctors had**

**randomly reviewed 85 records and wrote a report stating appellant to be**

**within the standard of care.** (See Exhibit C.)

4. The Hospital hired a non-expert reviewer and **provided him with**

**targeted issues against Appellant on which he was to write a report.** It was

revealed in testimony that the Hospital had provided this report to its voting body,

but not to Appellant or appellant's representative, Dr. McKenzie, thereby

15

prejudicing the voting body, and preventing Plaintiff a defense. (See Arbitration testimony p 1290-1293.) Furthermore, Dr. Goldstein, Chief of Medicine, Chief of Medicine, University of Southern California testified that **providing a reviewer with targeted issues "turns upside down the focus of the review and risks biasing the reviewer."**

5. At the first hearing, the bylaws barred either party from having an attorney present, however, the Hospital own in-house counsel was present as part of the panel, while appellant had no attorney present, **violating B&P Code § 809.3(C) which states "No peer review body shall be represented by an attorney if the licentiate is not so represented."**

6. The Hospital later b**ackdated the** <u>**Minutes**</u> **of its First** <u>**Hearing,**</u> **the hearing on which the 805 report was filed, to a week prior** and **falsely called it a "Meeting",** in **attempt to escape the statutory 809 hearing requirements, required for all hearings concerning final proposed actions on which a 805 report is required to be filed.**

### B.  The Arbitration Hearing.

1. For its arbitration hearing , the hospital **removed a number of charges that were presented at the first hearing and were the basis for its August 1ˢᵗ termination of appellant's hospital privileges, and the 805 report**

16

filing to the Medical Board, and **added additional charges that were <u>not</u> the**

**basis for the termination nor the 805 report filing.**

2. The hospital violated B&P Code 809.2, that required that the arbitrator

be a physician and of the same specialty. The Hospital chose an arbitrator who

was an attorney.

3. Furthermore, the Hospital c**hose an arbitrator whose career was**

**representing hospitals at arbitration hearings, and paid the Arbitrator's fee**

*100%.* This created a financial bias in violation of U.S. Supreme Court precedent

and due process:

See G*ibson v. Berryhill, supra*, 411 U.S. at p. 579 [93 S.Ct. at p. 1698]:

"The rule disqualifying adjudicators with <u>pecuniary interests</u> *applies with full force to administrative hearings.* In this context, **the court has applied the same rules to administrative hearing officers and judges alike**.... "It is [Page 27 Cal.4th 1027] sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." . . . An adjudicator with a financial interest in a proceeding presents a "situation []...in which experience teaches that **the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable.**" *Withrow v. Larkin*, 421 U.S. 35 (1975).

See also *Ward v. Village of Monroeville*, 409 U.S. 57, 60, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927). See also In *Re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed.2d 942 (1955), (holding that "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.... Accordingly, **"no man is permitted to try cases where he has an**

interest in the outcome.'')

The arbitrator upheld the Hospital's termination despite the evidence listed

below:

- The Hospital's statutory and due process violations during the peer review Process and Hearings.

- The California Medical's Board's investigational findings that no deviation from of the standard of care existed;

  - The renowned expert witnesses' testimony, led by Dr. Goldstein, finding appellant to be within the standard of care on all the charges, with supporting proof from authoritative texts and literature and the documentation in the medical records.

  Dr. Goldstein's Summary Brief:

  "…. In the end, this case is about a man's career, his life. While the Medical Executive Committee has ignored their community's standard for conducting fair and impartial peer review, the case against Robert Jaffe revolves around whether the fifteen cases under discussion prove his incompetence. Nothing could be further from the truth. Robert Jaffe is a dedicated, caring and bright physician. His patients adored him for good reason. …

  If these cases had been presented to an objective panel of clinicians, the charges would have been summarily dropped as ludicrous. The Medical Executive Committee never provided one shred of evidence from an impartial expert. The Medical Executive Committee simply had one Kaiser Physician testify after another. Indeed, many of the cases merely represent differences in clinical judgment between Dr. Jaffe and the Medical Executive Committee. There are many different ways to treat patients. All but two of the patients had quite satisfactory outcomes. The two poor outcomes in no way resulted from Dr. Jaffe's performance. If, of all of the charts (from eighteen years' experience) that were culled by the Medical Executive Committee, these fifteen were the worst that they could find, then why did the patients do as well as they did. If there was

such poor management by Dr. Jaffe, why was there such a dearth of poor outcomes? The vast majority of these cases arose not from quality fall-outs, but from proctoring, biased proctoring at that….Most troubling has been the Medical Executive Committee's lack of awareness of current clinical practice. Some examples of the Medical Executive Committee's poor judgment and inadequate fund of medical knowledge appeared in the cases of CW, ES, WC, DR and EH. The Medical Executive Committee's contention that Dr. Jaffe used the wrong antibiotic for CW not only reflects their bad judgment and poor knowledge, but also their inability to keep up with current literature. The Medical Executive Committee's argument that ES should have had a transfusion again speaks to their poor judgment and, at the same time, refutes Dr. Schottinger's claim as an expert in hematology. The Medical Executive Committee's assertion that WC was not a prime candidate for a trial on oral hypoglycemic agents is pure nonsense. The testimony of their supposed expert, Dr. Fatemi was an embarrassing display of ineptitude. Her lack of familiarity with the writings of Meyer Davidson[2], as well as the teachings of her own mentor, Dr. Jorge Mestman[3], clearly reflected her below-average level of knowledge. Ms. Meinhardt's assertions that DR and EH received inappropriately voluminous fluids is simply ludicrous. Were the Medical Executive Committee to share this latter opinion with an objective physician, or panel of physicians, the Medical Executive Committee would be advised to return to medical school for a refresher course in heart failure. Clearly the Medical Executive Committee could find no support for such a contention from their own doctors who also cared for these patients, namely Drs. Talkin Chief of Cardiology and (Internist Richard) Noceda, who saw these same patients as Dr. Jaffe, and advised fluid management.

    …Finally, there is the case of EH. In this situation the Medical Executive Committee has behaved so unprofessionally that it should have warranted dismissal of all charges against Dr. Jaffe. The medical record was altered to make it appear as if Dr. Jaffe had performed badly when in fact he had done nothing wrong. Dr. Jaffe did nothing

---

[2] Meyer Davidson, renown U.S. Diabetologist.
[3] Jorge Mestman world renown Professor of Medicine and  Diabetologist University of Southern California and recipient yearly of house-staff training award of Medicine.

to contribute to this unfortunate man's demise. To imply so is at best hypocritical. The Medical Executive Committee should have displayed some small bit of courage, admit the unprofessional behavior and pulled this charge from the case against Dr. Jaffe. The fact that they have not, taints the Medical Executive Committee's entire closing argument."

### C.   The Hospital's Third Hearing –(The Appellate Review Panel (ARP) Hearing):

1.   At this hearing (where Appellant was to appeal the Arbitrator's findings), Appellant who represented himself and **requested his right to voir dire the Panel regarding their selection process and bias based on their Kaiser affiliation;** However, the Panel's chair **shut down appellant's voir dire by falsely stating the three-member panel (which was comprised entirely of Kaiser affiliates) was accordance with the Bylaws, when the Bylaws stated** that only <u>one</u> member of the three-member panel need be Kaiser-affiliated. (Compl. ¶ 46.)   (See Appellant's voir dire attempt of the appellate review board panel (ARP transcript p. 9-14:L. 22-3).

2. **The hospital violated B&P 809.2 and due process by having an attorney present when appellant had no attorney present.**  (The Assistant General Counsel of both Kaiser Foundation Hospitals and Kaiser Health Plan, Inc. oversaw the panel  (Compl. ¶ 46.)

3.  Appellant presented the **California Medical's Board's investigational findings that no deviation from of the standard of care existed, However, the Panel disregarded the California Medical Board's findings, by falsely stating it had a higher standard of care than the community standard, despite Kaiser's own quality assurance witness testimony stating Kaiser's standard of care was the same as the community standard).**

4.  The Panel admitted (in testimony **it had not been provided with the medical records in order to review the validity of the Arbitrator's Findings'.** (ARP Testimony, p.23.)

5.  On June 8, 1998 the Panel handed down their decision (written by the Hospital's own counsel who had been present throughout all the proceedings), affirming the arbitrator's, and hospital's action, to terminate Appellant's hospital privileges.

## VI.  APPELLANT RAISED THE HOSPITAL'S STATUTORY AND DUE PROCES VIOLATIONS AND THE ARBITARY AND CAPRICIOUS ACTIONS OF THE ARBITRATOR BEFORE THE APPELLATE REVIEW BOARD PANEL

Appellant raised all the statutory and due process violations that occurred during the peer review process and the hearings and the arbitrary and capricious acts of the arbitrator before the Appellate Review Board panel.

## VII.  THE ACTS OF JUDICIAL FRAUD ON THE COURT

OF THE LOWER COURTS RESULTING IN A FRAUDULENT
JUDGMENT WHICH WERE NEVER REVIEWED BY ANY OF THE
COURTS AND OF WHICH THE U.S. ALSO SUPREME COURT ALSO
DENIED REVIEW ARE SET FORTH IN APPELLANT'S DISTRICT
COURT COMPL. (¶¶ 66-108)) AND OUTLINED BELOW:

1. Los Angeles Superior Court

   (a)   Superior Court Judge Yaffe's Ruling (Stating that in Order to
   Prevail On a Claim Of Financial Bias Of The Arbitrator That Appellant
   Must Show "Actual" Bias Of The Arbitrator) - Is Contrary to U.S.
   Supreme Court Precedent.

   Having exhausted his administrative remedies, Appellant filed a Petition

for Writ of Mandamus on December 16, 2001, in Los Angeles Superior Court, to

overturn the hospital's decision, wherein  Appellant raised the Hospital's multiple

statutory and due process violations, including (a) the  arbitrator's bias arising

from his financial interest in the outcome of the proceeding, stating that the

arbitrator had a direct financial interest in finding for the Hospital because he

was chosen and paid by the Hospital 100%,  and that his career was that of

representing hospitals in peer review proceedings.

   Appellate raised the issue that due to financial bias, the Arbitrator found for

the hospital, ignoring the testimony of the independent expert witness testimony,

and the California Medical Board.

   The California Superior's court's holding that Appellant must prove

"actual" bias and pecuniary interest based on the "outcome" of the hearing, in

order to prevail on an allegation of financial interest, is contrary to U.S. Supreme Court precedent. The Sixth District California Court of Appeal's holding in *Yaqub v. Valley Memorial Healthcare System*, 122 Cal.App.4th at 485 (2004). *Yaqub* [4], citing the principals of U.S. Supreme Court precedent *Tumey, Ward* and *Haas,* **held that no evidence of "actual prejudice" or of a direct financial interest in the "outcome" of a case is required for a showing of a financial interest in violation of due process.**

Furthermore, *Brown v. Vance,* 637 F.2d 272, 283 citing U.S. Supreme Court precedent, holds: "we need find *no instance of actual judicial bias* to hold the *fee system constitutionally infirm ....  The* test is whether *a fee system* presents a *'possible temptation* to the average man as judge to forget the burden of proof ... or to not hold the balance nice, clear and true."

"The unfairness that results from *biased* decision makers strikes so deeply at our sense of justice that it differs qualitatively from the injury that results from *insufficient* procedures." *Haas, supra* at 1036.  (Holmes, <u>The Common Law</u> (1881) p. 3.)

Federal law and the U.S. Supreme Court precedent hold that direct and substantial pecuniary interest creates a constitutionally unacceptable risk of bias.

---

[4]  At the time appellant brought the Yaqub case before the California Appellate Court, *Yaqub* had become final law. The California Appellate justices denied to take judicial notice of this case.

The high court has repeatedly and unambiguously held that courts, when faced with a claim of bias arising from financial interest, do *not* require proof of a direct pecuniary interest in the "*outcome*" of a particular case, or proof of *actual* judicial prejudice, nor do they decide whether the adjudicator was in fact influenced.

The standard continues instead to be that set out in *Tumey v. Ohio* (1927) 273 U.S. 510, 523 [47 S.Ct. 437, 441, 71 L.Ed. 749] and *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 60 [93 S.Ct. 80, 83]), namely whether a fee system presents a 'possible temptation to the average man as judge to forget the burden of proof...or which might lead him not to hold the balance nice, clear and true....' (Emphasis added.) *See also Aetna, supra,* 475 U.S. at pp. 824-825 [106 S.Ct. at pp. 1586-1587] and *Connally v. Georgia* (1977), 249 [97 S.Ct. 546, 548, 50 L.Ed.2d 444].

(*Tumey v. Ohio* (1927) 273 U.S. 510 holds , "Of all the types of bias that can affect adjudication, pecuniary interest has long received the most unequivocal condemnation and the least forgiving scrutiny ...It certainly violates the Fourteenth Amendment, and deprives a defendant...of due process of law, to subject his... property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case").

24

The U.S. Supreme Court holds that the rule disqualifying adjudicators with underline pecuniary interests applies with full force to administrative hearings. "While the rules governing the disqualification of <u>administrative hearing officers</u> are in some respects more flexible than those governing judges, <u>the rules are not more flexible on the subject of financial interest.</u>" *Tumey v. Ohio* (1927) <u>273 U.S. 510</u>.

"The high court has written: It is [Page 27 Cal.4th 1027] sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." (*Gibson v. Berryhill, supra,* 411 U.S. at p. 579 [93 S.Ct. at p. 1698].), p. 564-67).

An adjudicator with a financial interest in a proceeding presents a "situation[]…in which experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35 (1975).

*Gibson v. Berryhill, supra,* 411 U.S. at p. 579 [93 S.Ct. at p. 1698] holds:

"The rule disqualifying adjudicators with <u>pecuniary interests</u> applies with full force to administrative hearings. In this context, the court has applied the same rules to *administrative hearing officers and judges alike.* The high court has written: "It is [Page 27 Cal.4th 1027] sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes."

The U.S. Supreme Court requires disqualification of adjudicators only for financial interests that it has characterized as "direct, personal, substantial, [and]

pecuniary" rather than "slight." (*Aetna, supra*, <u>475 U.S. 813</u>, 825-826, quoting

*Ward, supra*, <u>409 U.S. 57</u>, 60 and *Tumey, supra*, <u>273 U.S. 510</u>, 523.)

   "The rights of physicians are also elucidated in federal law, as provided in <u>*42*</u>

<u>*U.S.C. § 11112, et seq*</u>.  Such protections comport with numerous Supreme Court

decisional  precedents, which require a fair hearing with the rudiments of due

process whenever individuals face loss of a substantial right.  *Mathews v. Eldrige*

724 U.S. 319 (1976);

   See *also Goldberg v. Kelly*, 397 U.S. 254, 267 (administrative hearings

demand rudimentary due process, and an 'impartial decision maker is essential.')"

   *See also Haas v. County of San Bernardino*, 27 Cal.4th at 1025, quoting

*Goldberg, supra,.* " ("Speaking of administrative hearings, and articulating the

procedural requirements 'demanded by rudimentary due process' in that setting,

the [United States Supreme Court] has said that, '<u>of course, an impartial decision</u>

<u>maker is essential</u>.'"

**(b)   Los Angeles Superior Court Judge Yaffe, Through Acts of Fraud on the Court Outlined Below, Denied Appellant's Petition for Writ Of Mandamus to Overturn the Hospital's Decision, without Performing the Required Standard of Review of the Statutory and Due Process Violations or the Medical Charges.**

   Superior Court Judge Yaffe violated the required review and through acts

of Fraud on the court waived and did not review the hospital's due process

violations <u>or</u> the medical charges.

Superior Court Judge Yaffe falsely stated essential facts, dates, issues and law and **devised a false premise in his Opinion which he used to "waive" and not address any of Appellant's statutory and fair procedure issues.**

This is contrary to the Superior court's standard of review. Per California Code of Civil Procedure (1094.5*(d)* the court was required to review the statutory and due process violations, and per 1094.5*(b)* the court was required to review the hospital's charges for substantial evidence in light of the whole record.

(1)  In Appellant's case, Judge Yaffe did **neither review.**  In his Opinion, he overtly falsely stated the essential facts, dates, issues and law that had direct bearing on the laws' applicability.  He then devised a false premise in his Opinion to waive and not address any of the statutory and due process violations that occurred during the hearings, (falsely stating that Appellant had not raised the issues before the Hospital's Appellate Review Board (ARP), and therefore they are waived, when the administrative record placed before him, documented that Appellant had in fact raised all the Hospital's  statutory and due process before the Appellate Review Board panel, including the issue of Arbitrator's financial bias in the outcome of the proceedings.)

(2)  Furthermore, Judge Yaffe did not perform his required standard of review (Cal. Civ. Proc. 1094.5(d) of the medical charges.  He addressed

only *one* of the 12 charges, and found on that charge by <u>changing the charge in his finding to a charge the hospital testified was not its charge</u>. Thereby Judge Yaffe found against appellant on a non-existent charge.

On January 10, 2003, Judge Yaffe' <u>denied Appellants' Petition for Writ of Mandamus</u> to overturn the hospital's decision despite the proof before him of the hospital due process violations and the proof before him of the of the independent renown medical experts' testimony and literature, and the California  Medical Board's findings that appellant's care  was within the standard of care on all the hospital's patient care charges.

**2.   THE STATE APPELLATE COURT, THROUGH ITS OWN ACTS OF FRAUD UPON THE COURT, UPHELD THE STATE SUPERIOR COURT'S ORDER, (DENYING APPELLANT'S PETITION FOR WRIT OF MANDAMUS)** *ALSO* **WITHOUT REVIEW OF THE HOSPITAL'S DUE PROCESS VIOLATIONS AND THE MEDICAL CHARGES.**

Appellant appealed to the State Appellate Court, regarding the superior court's judgment.

**(a)  The State Appellate Court Upheld the Superior Court's Order** *Also* **Without Review of the Hospital's Medical Charges** *Or* **the Due Process And Statutory Violations, Through Acts Of Fraud Upon Their Court By Devising Their Own False Premise In their Order, Which They Used To "Forfeit" And Not Address the Statutory And Due Process Violations that had Occurred During All Of The Hospital's Hearings.**

The Appellate Court judges upheld the superior court's judgment denying appellant's petition for writ of mandamus through their own acts of fraud on the

court, *also without review of the medical charges or the statutory and due process violations,* by devising their own false premise in their Order, to "forfeit" and not address the Hospital's statutory and due process violations. (Compl. ¶71-79)

The court falsely stated these issues were raised "only by reference to appellant's Opening Brief", when Appellant's Opening Brief, Reply Brief and Reply to Defendants' Motion to Dismiss Complaint, documents that appellant **had raised all the statutory and due process violations in full in his Appellate Briefs.** (See Exhibit F appellant's Reply to Defendants' Motion to Dismiss Complaint). (Compl. ¶71-79.)

**(b) The Appellate Court also failed to Review the Medical charges, for substantial evidence, violating the required Standard of Review under Statutory and Case law.**

See statutory and case law setting forth the appellate court's required standard of review:

"The ultimate questions, whether the agency's decision was...unlawful or procedurally unfair, are essentially questions of law. With respect to these questions the trial and appellate courts perform essentially the same function, and the **conclusions of the trial court are not conclusive on appeal.** The review of procedural issues, whether presented in mandamus proceedings brought under Code of Civil Procedure sections 1085 or 1094.5, should be the same. That is, foundational factual findings must be sustained if supported by substantial evidence; however, the ultimate determination of whether the administrative proceedings were fundamentally fair is a question of law to be decided on appeal.

"In reviewing a trial court's ruling on a writ of mandate, an appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence". Saathoff v. City of

San Diego (1995) 35 Cal.App.4th 697, 700.  *However,* where the duty appellant seeks to enforce is one derived from statute, the question is thus one of law.  Mandatory language is used in 809, et seq.  "When the language of a statute is plain and unambiguous, the court should apply its plain meaning."  Lungren v. Deukmejian (1988) 45 Cal.3d.727, 735.  "The interpretation or construction of a statute is purely a question of law."  Rodriguez v. Solis, 1 Cal.App.4th 502.  (Emphasis added.) Unnamed Physician, supra.

The language of California Business & Professions Code 809, et seq. is

plain and unambiguous:

> "If a licentiate timely requests a hearing concerning a final proposed action for which a report is required to be filed under Section 805, the following shall apply: (a) The hearing shall be held... before a panel of unbiased individuals who shall gain no direct financial benefit from the outcome . . . who have not acted as an accuser, investigator, fact finder, or initial decision maker in the same matter, and which shall include, where feasible, an individual practicing the same specialty as the licentiate. (b) If a hearing officer is selected to preside at a hearing held before a panel, the hearing officer shall gain no direct financial benefit from the outcome . . ."

(Emphasis added.)

"A person whose rights are being determined has a right to an impartial

panel to determine those rights" "The right to a fair procedure includes the right to

impartial adjudicators.  "If the agency has denied fair process, the agency has at

the same time failed to proceed according to law."  *Applebaum v Board of*

*Directors*, 104 Cal.App.3d. 648; 163 Cal.Rptr. 831; C.C.P. § 1094.5(b).

Cal.Civ.Code 1094.5(b) states:  The inquiry in such a case shall *extend* to the

questions of whether the respondent has proceeded...in excess of jurisdiction;

whether there was a fair trial; and whether there was any prejudicial abuse of discretion.   Abuse of discretion is established if the respondent has not proceeded in the manner required by law…"

**3.   THE FEDERAL DISTRICT COURT THROUGH JUDICIAL ACTS OF FRAUD ON THE COURT SUMMARILY DISMISSED APPELLANT'S FRCP RULE 60(B) INDEPENDENT ACTION FOR RELIEF FROM JUDGMENT TO SET ASIDE THE STATE  COURT JUDGMENT FOR FRAUD ON THE COURT, WITHOUT REVIEW OF THE FRAUD ON THE COURT ALLEGATIONS.**

> **(a)  The District Court Summarily Dismissed Appellant's District Court Complaint falsely stating "lack of subject matter jurisdiction Under Rooker-Feldman Doctrine, when Rooker-Feldman does Not Bar subject matter jurisdiction of actions to set aside a judgment for fraud on the court.."**

On December 18, 2006 appellant timely filed an FRCP Rule 60(b) independent action in the district court (Case CV06-8094 DDP(JTLx)) for relief from the state court judgment for fraud on the court, naming the state court and state appellate court judges, as they had upheld the hospital's decision through acts of fraud  on the court, and without review of the due process violations,  the medical charges, or appellant's fraud on the court allegations,  contrary to the required review under U.S. supreme Court precedent, and federal case law. (App.74-269.)

On February 8, 2007  the Federal District Court (under Judge Pregerson) summarily dismissed Appellant's Complaint,  **falsely stating lack of subject**

31

matter jurisdiction under the Rooker-Feldman Doctrine, <u>ignoring the</u>

<u>Kougasain Exception to the Rooker-Feldman doctrine</u> that Appellant cited before

him, (holding that actions for relief from judgment procured by fraud on the court

are not barred by Rooker-Feldman Doctrine.)

### (b) Summary Dismissal of a Pro Se Complaint, When the Plaintiff has been Denied an Evidentiary Hearing Violates U.S. Supreme Court Precedent.

The district court "summarily dismissed" appellant's *pro se* action for relief

from judgment for fraud on the court, <u>without review of the fraud on the court</u>

<u>allegations--the very allegations on which relief could be granted:</u>

(1) This denied appellant an evidentiary hearing which is contrary to U.S.

Supreme Court precedent per <u>*U.S. v. Throckmorton*, 98 U.S. 61</u> supra (requiring

that actions for relief from judgment procured by fraud on the court be tried in

open court, that the allegations receive the consideration of the court, and if fraud

on the court is found the judgment must be set aside);

(2) This is contrary to federal law which holds, "[A] complaint, <u>especially</u>

<u>a *pro se*</u> complaint, should <u>not be dismissed summarily unless 'it appears beyond</u>

<u>doubt that the Plaintiff can prove no set of facts in support of his claim which</u>

<u>would entitle him to relief</u>", *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert.*

*denied*, 439 U.S. 970 (1978):

(3) This also violates <u>*United States v. Alex*</u>, 81-6010, (holding summary

affirmance is <u>prohibited where the Plaintiff has been denied an evidentiary</u> <u>hearing</u>.

## 4. THE FEDERAL DISTRICT COURT DENIED THE FILING OF APPELLANT'S TIMELY SUBMITTED RULE 60(B) <u>MOTION</u> TO SET ASIDE THE JUDGMENT FOR FRAUD ON THE COURT.

On February 22, 2007 Appellant timely submitted an FRCP Rule 60(b) <u>Motion</u> with District Court (Judge Pregerson), to set aside the Summary Dismissal of appellant's Complaint, on the basis that the complaint was **falsely dismissed for lack of subject matter jurisdiction under Rooker-Feldman: ignoring Rooker Feldman Kougasain Exception , which** Appellant cited(, supra. 359 F.3d 1136-11139 (9th Cir. 2000), (holding <u>Rooker-Feldman</u> does <u>not</u> bar actions from relief from judgments for fraud on the court). Appellant proved that the Pregerson Court did not address his state courts' fraud on the court allegations.

However, the Judge Pregerson denied the filing of Appellant's FRCP Rule 60(b) <u>Motion</u> to set aside his order summarily dismissing his complaint for lack of subject matter jurisdiction. His order stated **"Order not to file"** December 13, 2007; thereby **again denying appellant an evidentiary hearing and due process.**

## 5. THE APPELLATE COURT WITHOUT REVIEW OF THE FRAUD ON THE COURT ALLEGATIONS - THE SUBJECT MATTER OF APPELLANT'S ACTION AFFIRMED THE DISTRICT COURT'S ORDER NOT TO FILE APPELLANT'S RULE 60(B) MOTION.

On June 22, 2010, the Ninth Circuit Appellate Court (under Judge Canby)

33

affirmed Judge Pregerson's Order not to file appellant's Rule 60(b) Motion and did not review the fraud on the court allegations or the subject matter of appellant's cases, stating in his order: **"We decline to address Dr. Jaffe's contentions regarding the underlying dismissal of his case."** (App.44-45). This thereby violated the required de novo review of Appellant's fraud on the court allegations which Appellant had set forth in full.

**6. THE DISTRICT COURT, THROUGH JUDICIAL ACTS OF FRAUD ON THE COURT OUTLINED BELOW, SUMMARILY DISMISSED APPELLANT'S RULE 60(B) INDEPENDENT ACTION FOR RELIEF FROM JUDGMENT FOR FRAUD ON THE STATE COURT - *WITHOUT REVIEW OF THE FRAUD ON THE COURT ALLEGATIONS,* AND BY *FALSELY CLAIMING JUDICIAL IMMUNITY WHEN NO MONETARY DAMAGES WERE SOUGHT.* RELIEF FROM JUDGMENT FOR FRAUD ON THE COURT WAS SOUGHT.**

On October 11, 2011, Appellant filed a *second* District Court Complaint to set aside the state court judgment for fraud on the court (Case No. 2:11-CV-08363-SVW) (Under Judge Wilson) naming the appellate court justices who also denied Appellant an evidentiary hearing.

- Judge Wilson summarily dismissed Appellant's Complaint without review of the fraud on the court allegations. See Court's February 2, 2012 Order, (page 2, fn. 1) (App. 320-332): "Because of judicial immunity the court **need not address whether Appellant has sufficiently alleged fraud on the court.**"

Judge Wilson ignored that judicial immunity does not exist for judicial acts of fraud on the court (*Bulloch, supra.*)

**7. THE FEDERAL DISTRICT COURT, THROUGH ACTS OF FRAUD ON THE COURT DENIED REVIEW OF APPELLANT'S FRCP RULE 60(B) <u>MOTION</u> TO SET ASIDE THE STATE COURT JUDGMENT FOR FRAUD ON THE COURT <u>WITHOUT REVIEW OF THE FRAUD ON THE COURT ALLEGATIONS,</u> *AND* BY ORDERING THAT APPELLANT'S TIMELY SUBMITTED RULE 60(B) MOTION <u>NOT BE FILED</u>.**

On February 27, 2012. Appellant timely filed a Motion for

Reconsideration in the District Court (under Judge Wilson) on the basis that Judge

Wilson had summarily dismissed Appellant's Complaint for relief from judgment

for fraud on the court, without review of the fraud on the court allegations, thus

denying Appellant an evidentiary hearing. Appellant cited Federal and U.S.

Supreme Court precedent holding that judicial immunity does not bar actions for

relief to set aside a judgment for judicial fraud on the court as no monetary

damages were sought.

**8. THE FEDERAL APPELLATE COURT, THROUGH ACTS OF FRAUD ON THE COURT, <u>SUMMARILY AFFIRMED</u> THE DISTRICT COURT'S ORDER NOT TO FILE APPELLANT'S RULE 60(B) MOTION, <u>WITHOUT REVIEWING THE FRAUD ON THE COURT VIOLATIONS, VIOLATING ITS DE NOVO REVIEW</u>.**

On April 10, 2012 Appellant appealed before the Ninth Circuit Appellate

Court under (Judge Leavy), the District Court's Order Not to File Appellant's Rule

60(b) Motion, on the basis <u>that U.S. Supreme Court precedent holds that "judicial</u>

<u>immunity" does not bar actions to set aside judgments procured by "judicial" fraud</u>

<u>on the court</u>.

On June 24, 2012, the <u>summarily affirmed the district court's summary dismissal of appellant's district court complaint</u> (Jaffe v. Pregerson, et al., Case No. 12-55664.) through judicial acts of fraud on the court, again without review of the fraud on the court allegations . <u>Their Order</u> stating the complaint was "so insubstantial as to merit further argument", **despite U.S. Supreme Court president placed before them, <u>*United States v. Alex*</u>, 81-6010, holding that summary affirmance is prohibited where the Plaintiff has been denied an evidentiary hearing.**

The Ninth Circuit Justices denied the required de novo review and upheld the District Court's Order not to file appellant's timely submitted Rule 60(b) motion stating, "<u>We decline to comment on the issues contained in appellant's 60(b) Motion regarding the dismissal of Plaintiff's District Court complaint</u>", when his Rule 60(b) Motion contained the proof (by citing Rooker-Feldman and Kougasain, supra 359 F.3d 1136-11139 (9th Cir. 2000)), that his Complaint <u>was falsely dismissed under Rooker-Feldman and that the district court did in fact have subject matter jurisdiction per the Kougasian Exception to the Rooker-Feldman Doctrine, and that appellant's fraud on the court allegations were, through acts of fraud on the court, not addressed.</u>

**9. THE FEDERAL DISTRICT COURT, THROUGH ACTS OF FRAUD ON THE COURT, ORDERED THAT APPELLANTS RULE 60(B) MOTION NOT BE FILED, THEREEBY DENYING REVIEW OF**

**APPELLANT'S FRCP 60(B) <u>MOTION</u> FOR RELIEF FROM JUDGMENT FOR FRAUD ON THE COURT.**

On March 11, 2013 Appellant timely filed in the District Court (under Judge Wilson) a *Rule 60(b) Motion to set aside his March 26, 2012* **Order** on the grounds that:

- 1) The judge's Order falsely called appellant's Rule 60(b) Motion a **"Motion for Reconsideration"**;

- (2) **Falsely stated it to be untimely under the rules of a Motion for Reconsideration.** (A Motion for Reconsideration must be filed within 30 days, *whereas a Rule 60(b) Motion for Relief from Judgment for Fraud on the Court must be filed within one year*.) Appellant's 60(b) Motion for Relief from Judgment for Fraud on the Court was timely filed within one year.

- ~~(3) Did not perform the standard of review required for motions and complaints to set aside a judgment for fraud on the court as set forth under Hazel-Atlas, 322 U.S. at 250-51 and, did not address the court allegations.~~

**10. THE FEDERAL APPELLATE COURT THROUGH ACTS OF FRAUD ON THE COURT, UPHELD THE DISTRICT COURT'S DENIAL OF REVIEW OF APPELLANT'S FRCP RULE 60(B) <u>MOTION</u> FOR RELIEF FROM JUDGMENT TO SET ASIDE THE STATE COURT JUDGMENT FOR FRAUD ON THE COURT <u>WITHOUT REVIEWING THE FRAUD ON THE COURT ALLEGATIONS.</u>**

On March 21, 2013 Appellant appealed to the Ninth Circuit Appellate Court, (under Judge Tashima), the district court (Judge Pregerson's) **order denying Appellant's FRCP Rule 60(b) Motion,** setting forth the judicial acts of fraud on the court, the FRCP law, U.S. Supreme Court and federal case precedent,

37

showing that the District court <u>has subject matter jurisdiction over actions for relief for judgment for fraud on the court</u> and that the allegations must receive the consideration of the court.

On September 9, 2013 the Ninth Circuit Appellate Court (under Judge Tashima) **summarily affirmed the district court's summary dismissal** of Appellant's **Rule 60(b) action and motion for relief from judgment for fraud on the court**, by ignoring U.S Supreme Court precedent and federal law, by **citing holdings irrelevant to the standard of review required for actions and motions for relief for judgment for fraud on the court.** The <u>correct standard of review</u> is set out in Hazel-Atlas, 322 U.S. at 250-51 and *United States v. Throckmorton*, 98 U.S. 61 (1878).

- The Ninth Circuit Appellate Court (Judge Tashima) **summarily affirmed the District Court's summary dismissal,** falsely stating Appellant's Case was "insubstantial as to merit an opening brief and hearing." (violating **U.S Supreme Court precedent)** *United States v. Alex,* 81-6010, (holding that **summary affirmance is prohibited where the Plaintiff has been denied an evidentiary hearing)** despite the probative evidence placed before appellate court.

The Ninth Circuit's September 9, 2013 Order (Judge Tashima) citing *Palomo v. Baba,* (497 F.2d 959, 960 (9th Cir. 1974) stating, "the district court cannot act in a manner **inconsistent with the mandate of affirmance,** <u>except with consent of this court</u>.", is directly contrary to the 7th Circuit's holding that "a **decision produced by fraud upon the court is <u>not</u> in essence a decision at all,** *never becomes final,* never gains **validity with the passage of time,** is void ab initio, and, "**No court has authority to validate a void order.**"

- Furthermore, the Ninth Circuit's statement is contrary to the holding in Fisher *v. Amaraneni*, 565 So. 2d.84 (Ala. 1990) (holding **Rule 60(b)(4) motions involve a different standard of review than the other Rule 60(b) subsections…"[w]hen the denial turns on the validity of the judgment, discretion has no place for operation. If the judgment is void it must be set aside"**.

    Thus, the Court's statement that it cannot act in a manner **inconsistent with the mandate of the court does not apply to judgments procured by fraud on the court, as a mandate does not make valid an invalid judgment.**

- Judge Tashmi had again ignored the standard of review required for actions for relief from judgment for fraud on the court, instead citing *United States v. Hooton,* 693 F.2d 857, 858 (9th Cir. 1982), **stating *Hooton* sets the "standard", when *Hooton* is inapposite. Hooton involved a motion to vacate a judgment based on <u>newly discovered evidence.</u> It does not govern the standard of review for actions for relief from judgment for fraud on the court.**

Thus all the federal courts had summarily dismissed and summarily affirmed the summary dismissal of Appellant's actions and motions to set aside the judgment for fraud on the court, **without ever performing their required standard of review of the fraud on the court allegations --the very allegations on which relief could be granted.** Thus appellant has denied appellant an evidentiary hearing. (See *Throckmorton*, 98 U.S.61, 25L.Ed. 9).

## 11. THE U.S. SUPREME COURT JUSTICES DENIED REVIEW OF APPELLANT'S PETITION FOR WRIT OF CERTIORARI THROUGH ACTS OF JUDICIAL FRAUD ON THE OURT (PER BULLOCH, SUPRA), AS FEDERAL LAW HOLDS WHEN THE <u>VALIDITY OF A JUDGMENT IS CALLED INTO QUESTION DISCRETION HAS NO PLACE FOR OPERATION.</u>

In November 2013 Appellant sought justice from the U.S. Supreme Court, but again was denied an evidentiary hearing. He petitioned the U.S. Supreme Court for a rehearing, but yet again was denied on May 5, 2014.

His Petition asked the .S. Supreme Court to exercise its supervisory power over the lower courts as, the lower courts had upheld the hospital's decision through acts of fraud on the court and all without performing the required standard of review of the hospital's **statutory and due process violations**, the **medical charges,** or appellant's **fraud on the court allegations,**

Violating *Potvin, supra.* (2000) 22 C.4th 1059, 1066; See also Pinsker II, supra, and U.S. Supreme Court precedent outlining the **required standard of review for fraud on the court actions:** (*Hazel-Atlas, supra,* 322 U.S. at 250-51 and *U.S. v. Throckmorton,* 98 U.S. 61). (requiring that actions for relief from judgment procured by fraud on the court be tried in open court, that the allegations receive the consideration of the court, and that Appellant be allowed to exhibit his case.

## VIII.

**APPELLANT APPEALS THE INSTANT DISTRICT COURT'S
(1) ORDER AND JUDGMENT DATED JULY 28, 2015 GRANTING
DISMISSAL OF APPELLANT'S COMPLAINT AND ACTION; AND
(2) THE INSTANT COURT'S DENIAL OF PLAINTIFF'S MOTION FOR
RECONSIDERATION DATED AUGUST 12, 2015 AS THE INSTANT
DISTRICT COURT'S ORDER AND JUDGMENT WERE BASED ON
STATEMENTS SHOWING A MANIFEST FAILURE TO CONSIDER
MATERIAL FACTS PRESENTED TO IT BEFORE RENDERING ITS
DECISION.**

Appellant appeals the instant district court's (under Judge Fischer) (1) Order and Judgment dated July 28, 2015 granting dismissal of appellant's district court complaint and action; and (2) the instant district court's denial of Appellant's Motion for Reconsideration dated August 12, 2015 as the instant district order and judgment were based on statements showing a manifest failure to consider material facts presented to the district court before its decision:

**(A)   This District Court's Memorandum stating:  "The complaint alleges that the <u>Supreme Court</u> was <u>incorrect</u> in its <u>refusal</u> to grant a Writ of Certiorari in Plaintiff's <u>State Court case</u>." is a manifest showing of a failure of the Court to consider material facts presented to it before Rendering its Decision.**

~~First, appellant's FRCP 60(b)(4) Complaint for Relief from Judgment obtained by Fraud on the Court does not name the Supreme Court, it names the~~ <u>justices</u> of the Supreme Court, for failure to perform their judicial function in accordance within the definition "judicial fraud on the Court" under *Bulloch v. United States,* 763 F.2d 1115 (10th Cir.1985), (defining judicial fraud on the court "… were the <u>judge has not performed his judicial function</u>… so that the <u>judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication</u>.')

Secondly, Appellant's Complaint's does not contend a <u>refusal</u> to grant appellant's Petition.  Appellant's 60(b)(4) District Court Complaint for Relief

41

from Judgment obtained by Fraud on the Court, cites federal case law holding that a <u>court of appeal</u>, including the US Supreme Court, which is a court of appeal, does not have "<u>discretion</u>" to deny Appellant's Petition for Writ of Certiorari on his Rule 60(b)(4) action, as the <u>denial of the Petition turned on the validity of the judgment,</u> and federal law holds <u>when the validity of the judgment is called into question on appeal discretion has no place for operation</u>.

  See <u>Fisher v. Amaraneni,</u> 565 So. 2d 84 (Ala. 1990), wherein the Supreme Court of Alabama reversed a denial of the granting of a Rule 60(b)4 motion, by referencing its own ruling in <u>Smith v. Clark,</u> 466 S.O. 2d 138, 141 (Ala. 1985) holding ("a Rule 60(b)4 motion has a different standard of review <u>on appeal.</u> When the <u>grant or denial turns on the validity of the judgment, discretion has no place for operation."</u>)

  Appellant's Complaint ¶116-118, states that in failing to exercise their supervisory power and in denying Appellants' Petition for Writ of Certiorari, <u>when federal law states discretion has no place for operation when the validity of a judgment is called into question,</u> the Supreme Court Justices have:

  (1)  Let stand a fraudulent state court decision that deprived Appellant of a constitutionally protected property right (his already licensed hospital privileges) *without the due process of law*;

(2)  Failed to enforce and uphold case and statutory law (Business & Professions Code 809, et seq., Federal statute (42 U.S.C. § 11112) and due process law that governed the hospital's peer review and all three of the hearings, requiring that any hearing concerning a final proposed action for which an 805 is required to be filed, be held in strict accordance with due process.

(3)  Have allowed an arbitration hearing to occur where the hospital violated due process by choosing an arbitrator whose career was representing hospitals in peer review proceedings and <u>paying the Arbitrator's fee 100%,</u> thus failing to enforce well established U.S. Supreme Court precedent:

Tumey, v. Ward, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927)); holding "an adjudicator with a 'direct, personal, substantial, and pecuniary interest in a proceeding deprives a party of due process of law and violates the Fourteenth Amendment.... Of all the types of bias that can affect adjudication, pecuniary interest has long received the most unequivocal condemnation and the least forgiving scrutiny . . . . It certainly violates the Fourteenth Amendment and <u>due process of law, to subject his... property  to the judgment of a court a judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him</u> in his case")....While the rules governing the disqualification of <u>administrative hearing officers</u> are in some respects more flexible than those governing judges, <u>the rules are not more flexible on the subject of financial interest.</u>"  "An adjudicator with a financial interest in a proceeding presents a "situation []...in which experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable."

*Haas, supra* at 1036. (Holmes, <u>The Common Law</u> (1881) p. 3.) "We need find *no instance of actual judicial bias* to hold the *fee system*

*constitutionally infirm ....The* test is whether *a fee system* presents a *'possible temptation* to the average man as judge…"

*Gibson v. Berryhill, supra*, 411 U.S. at p. 579 [93 S.Ct. at p. 1698]. "The rule disqualifying adjudicators with <u>pecuniary interests</u> applies with <u>full force to administrative hearings</u>.   In this context, the court has applied the same rules to *administrative hearing officers and judges alike*.   The high court has written: "It is [Page 27 Cal.4th 1027] sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." . . . An adjudicator with a financial interest in a proceeding presents a "situation []…in which experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable."

(4)  Have allowed the *state and appellate court justices* to violate the required standard of review under CCP 1094.5(b) and (d), by their *upholding of ~~the hospital's decision without review of the due process violations, the medical~~ ~~charges~~* ~~(in violation of U.S. Supreme Court precedent, Potvin , supra (2000) 22~~ C.4th 1059, 1066 and <u>Pinsker II</u>, <u>supra</u>, 12 Cal.3d p.550).

(5)  Have allowed the lower courts to unlawfully <u>summarily dismiss</u> and summarily uphold the summary dismissal of Appellant's district court Rule 60(b(4) complaints and motions to set aside a judgment for fraud on the court, <u>without review of the fraud on the court allegations – the very allegations on which relief could be granted</u>, (thereby failing to uphold <u>United States v. Alex</u>, *81-6010 (*holding that <u>summary affirmance</u> is <u>prohibited where the Appellant has been denied an evidentiary hearing</u>);

44

(6)   Have allowed the lower courts to deny Appellant an evidentiary hearing on the subject matter of the case (by failing to uphold U.S. Supreme Court precedent, <u>U.S. v. Throckmorton</u> ( 98 U.S. 61, 25 L.Ed. 93 holding "the cases where such relief has been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has <u>never been a real contest before the court of</u> <u>the subject matter of the suit;</u>"

(7)   Have let stand a state court judgment that was <u>obtained and sustained</u> <u>through extrinsic acts of judicial fraud on the lower courts,</u> (by the justices falsely stating essential facts, dates, issues and law in their Opinions in order to evade applicability of the statutory, case and due process violations law, and by devising false premises in their opinions which they used to *"waive", "forfeit" and not* *address* the hospital's <u>statutory and due process</u> or the <u>medical charges</u> that had allegedly formed the basis for Appellant's termination (Compl. ¶ 66-108));

(8)   Have allowed the justices of all the lower courts to proceed in a manner prohibited by law by failure to review through judicial extrinsic acts of fraud on the court detailed with specificity in Appellant's Compl. ¶ 66-108, the hospital's <u>statutory and due process violations,</u> the <u>medical charges,</u> appellant's <u>fraud on the</u> <u>court allegations,</u> and the U.S Supreme Court in denying review of Appellant's Petition for certiorari when <u>federal law holds when the validity of a judgment is</u>

45

called into question on appeal, discretion has no room for operation.

**(B)  The District Court's July 28, 2015 Order Stating It "Has No Jurisdiction to Review the Actions of the Supreme Court nor any authority to Correct any Perceived Errors Made by the Court" is a Manifest Showing of a Failure to Consider Material Facts Presented to the Court Before Such Decision.**

Appellant's Complaint does not allege "errors" of the Supreme Court, nor does it ask the District Court to correct an error made by the court.

Appellant's Rule 60(b) District Court Complaint for Relief from Judgment for Fraud on the Court, alleges extrinsic "acts" of judicial fraud on the Court, and seeks review of the extrinsic acts of the fraud on court allegations pled with specificity in Appellant's Complaint ¶ 66-108, which have never been reviewed by any of the courts.

Rooker-Feldman doctrine (*supra*) by its Kougasain Exception (I), holds that fraud on the court is by "definition" not an error of the court: "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error. Rooker-Feldman therefore, does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by the fraud."

Furthermore, in *Barrow v. Hunton*, 99 U.S. (9 Otto), the U.S. Supreme Court distinguished between errors by the state court, which could not be reviewed in federal circuit court, and extrinsic acts of fraud on the state court, which is a basis

for an independent suit in circuit court. "…A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party…. Extrinsic fraud on a court is, by definition, not an error by that court…." The Rooker Feldman doctrine, as delineated by the *Kougasian exception,* does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud."

(See *Kougasian v. TMSL, Inc.* 359 F.3d 1136-1139 (9th Cir. 2000):

"… a plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party…. Extrinsic fraud on a court is, by definition, not an error by that court….*Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Kougasian v. TMSL, Inc.* 359 F.3d 1136-1139 (9th Cir. 2000)….

"If issues presented in a federal suit are "inextricably intertwined" with issues presented in a forbidden de facto appeal from a state court decision, Rooker-Feldman dictates that those intertwined issues may not be litigated…As we explained in Noel v. Hall, "inextricably intertwined" has a narrow and specialized meaning in the Rooker-Feldman doctrine. See Noel, 341 F.3d 1166. If a federal plaintiff has brought a de facto appeal from a state court decision—alleging legal error by the state court and seeking relief from the state court's judgment—he or she is barred by Rooker-Feldman…In this case, Kougasian has asserted no legal error by the state court. She is therefore not bringing a de facto appeal under Rooker-Feldman. Because she is not bringing a forbidden de facto appeal, there are no issues with which the issues in her federal claims are "inextricably intertwined" within the meaning of *Rooker-Feldman…Rooker-Feldman* does not bar Kougasian's federal suit on those causes of action…"

(Emphasis added.)

**(C)   The District Court's July 28, 2015, Order Stating, "The Court Has No Jurisdiction to Review the <u>Actions of the Supreme Court</u> and, that plaintiff Requests that this Court <u>Reopen The Matter To Consider His Allegations Of Fraud On The Court</u> is a Manifest Showing Of A Failure To Consider Material Facts Presented To The Court Before its decision.**

First, the District Court's 7/29/15 Order stating that <u>appellant requests the Court to reopen the matter to consider his allegations of fraud on the court</u>, is a manifest showing of a failure to consider the material facts presented to the court before its decision, as Appellant's Complaint and Action documents that Appellant's <u>fraud on the court allegations have through acts of extrinsic fraud on the court pled with specificity in Appellant's Complaint ¶ 49-108,  have never been reviewed by any of the courts and that U.S. Supreme Court precedent</u> requires that the fraud on the court allegations receive the consideration of the court and be tried in open court.  (See Hazel-Atlas, 322 U.S. at 250-51.)

> "This is a suit in equity in the District Court to set aside or amend the judgment.  Such a proceeding is required to be settled by federal law and would be tried, as it should be, in <u>open court</u>...As to the immediate aim of this proceeding, namely, to nullify the judgment if the fraud procured it,.. <u>The District Court has the power upon proper proof of fraud to set aside [a judgment]</u>...<u>in a trial which has presented the claims of the parties and where they have received the consideration of the court</u> ...If it is found that there was a fraud on the court, the judgment should be vacated."

Furthermore, the federal district court has subject matter jurisdiction over Appellant's Rule FRCP Rule 60(b) district court complaint and action to set aside a judgment for fraud on the court, under FRCP Rule 60(b),

A court of general jurisdiction has inherent equity power, aside from statutory authorization, to vacate and set aside judgments obtained through extrinsic acts of fraud. (*Weitz v. Yankosky*, *supra*, 63 Cal.2d 849, 855; *Hallett v. Slaughter* (1943) 22 Cal.2d 552, 557 [140 P.2d 3]; *Olivera v. Grace* (1942) 19 Cal.2d 570, 576 [122 P.2d 564, 140 A.L.R. 1328]; see Cal. Civil Appellate Practice (Cont. Ed. Bar) §§ 4.30-4.35; 30A Am.Jur., Judgments, §§ 755, 769, 783-784.) [2] **This power may be invoked . . . an independent action in equity.** (*Olivera v. Grace, supra*, 19 Cal.2d 570, 576; *Shields v. Siegel* (1966) 246 Cal.App.2d 334, 337 [54 Cal.Rptr. 577].) [70 Cal.2d 147].

*U.S. v. Throckmorton, 98 U.S. 61*, 25 L. Ed. 93 holds, "the cases where such relief has been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has been never been a real contest before the court of the subject matter of the suit.")

**(D) The District Court's Judgment dated July 28, 2015, (P. 1) Ordering That Plaintiff Take Nothing Is A Manifest Showing Of A Failure To Consider Material Facts Presented To The Court Before Such Decision.**

The instant District Court's Order dated July 28, 2015, (p. 1) ordering that

**plaintiff take nothing** is a manifest showing of a failure to consider material facts presented to the Court before such decision, as appellant's Rule 60(b) complaint for **relief from judgment for fraud on the court, does <u>not seek monetary relief</u>.** It seeks **to set aside the state court judgment for fraud on the courts.** (See appellant's motion for reconsideration denied on August 12, 2015.)

> **(E)  The District Court's s Judgment (p. 1) Ordering That Plaintiff's Action be <u>dismissed With Prejudice</u> Shows A Manifest Failure To Consider Material Facts Presented To The Court Before Such Decision as U.S. Supreme Court Precedent Holds A Court <u>Cannot Summarily Dismiss A Complaint When a Plaintiff Has Been Denied An Evidentiary Hearing on the Subject Matter of the Complaint</u> .**

See <u>*United States v. Alex*</u>, 81-6010 holding that summary affirmance is ~~prohibited where the Appellant has been denied an evidentiary hearing.~~

~~Appellant's complaint and action documents that at each court to which appellant~~ has applied for justice each court <u>through extrinsic acts of judicial fraud on the courts (pled with specificity in appellant's complaint ¶ 80-1010)</u>, obtained and sustained a fraudulent state court judgment upholding the termination of Appellant's Hospital privileges, **without review** of the hospital's **due process violations, without review of** the **hospital's medical charges,** violating California Supreme Court's precedent, <u>*Potvin* , *supra*</u> (2000) 22 C.4th 1059, 1066 and <u>Pinsker II</u>, <u>supra</u>, 12 Cal.3d p.550) (holding a hospital's decision for removal of privileges can only be upheld if is found to be *both substantively rational and*

*procedurally fair).*

**(F)  The Statement in The District Court's July 28, 2015 Judgment Ordering that Defendants' <u>Recover Their Costs Of Suit Pursuant To 28 U.S.C § 1919,</u> is a Manifest Showing of A Failure To Consider Material Facts Presented to the Court before such decision, <u>as 28 U.S.C § 1919 Governs the Granting of Attorneys' Fees "for Lack Of Subject Matter Jurisdiction Only",</u> and The District Court had Inherent Subject Matter Jurisdiction Over Actions To Set An Action For Fraud On The Court, Under FRCP Rule 60(B) and federal and case law:**

The District Court's July 28, 2015 Judgment ordering that defendants recover their costs of suit **pursuant to 28 U.S.C § 1919,** is a manifest showing of a failure to consider material facts presented to the court before such decision, as 28 U.S.C § 1919 governs the granting of attorneys' fees "**for lack of subject matter jurisdiction only**". This district court, under FRCP Rule 60(b) and federal and case law had inherent subject matter jurisdiction over actions to set an action for fraud on the court.

The district court had jurisdiction of Appellant's FRCP Rule 60(b) Complaint to set aside the judgment for fraud on the court, under FRCP Rule 60(b)(4) and (d).  (See also *Pumphrey, supra*, 62 F.3d 1128, 1130 (9th Cir.1995.)

See also *Marshall v. Holmes,* 141 U.S. 589-595 (1891) and *Hazel-Atlas, supra*, 322 U.S. at 244-45 holding, "the federal court has inherent powers to breach finality of a judgment procured by on fraud upon the court."

As shown above, Appellants' Complaint (¶¶ 80-101) documents that at each court to which Appellant has applied for justice, the justices of each court violated their standard of review and failed to perform their judicial function in accordance within the definition of "judicial fraud on the Court" under *Bulloch, supra,* 763 F.2d 1115 (10th Cir.1985) (defining judicial fraud on the court "… were the judge has not performed his judicial function… so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.')

Appellant's complaint further documents that through judicial acts fraud on the court detailed with specificity in Appellant's District Court Compl. ¶ 66-108), the justices of each court did not perform their required review of the hospital's due process violations, or the medical charges, or their required review Appellants' fraud on the court allegations.

Thus, per U.S. Supreme Court precedent, appellant has been denied due process and an evidentiary hearing on the subject matter of his suit.

See *U.S. v. Throckmorton*, 98 U.S. 61, 25 L.Ed. 93 (holding "The cases where such relief has been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has never been a real contest before the court of the subject matter of the suit.")

## IX. CONCLUSION

The foregoing shows a manifest showing that the instant District Court (Judge Fischer) failed to consider material facts presented to it before rendering its July 28, 2015 Order and Judgment dismissing Appellant's Complaint and Action.

Based on the foregoing, Appellant respectfully requests that this Appeals Court reconsider the district court's (Judge Fisher's) Order and Judgment dismissing Appellant's Complaint and Action and Order denying Appellant's Motion for Reconsideration.

Appellant respectfully requests that this court set aside the state and federal court judgments as they were procured and sustained through judicial acts of fraud on the court and/or to direct to the U.S. Supreme Court to accept appellant's Petition for Writ of Certiorari as federal case law holds that when the denial turns on the validity of a judgment discretion has no place for operation.

DATED:    November 23, 2015                 RESPECTFULLY SUBMITTED,

ROBERT J. JAFFE, M.D.
Appellant in Pro Se

53

## CIRCUIT RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE

Per Ninth Circuit Rule 32(a)(7)(C), I certify that this brief complies with the type volume limitation of Fed. Rule App. 32(a)(7)(B), has a typeface of Times New Roman scalable, 14 point size and contains 13,564 words as counted by the Microsoft Word 97 word-processing program , including all text, headings, footnotes, signature blocks, caption and this page.

## STATEMENT OF RELATED CASES

Per Circuit Rule 28-2.6, Federal Rules of Appellate Procedure with Ninth Circuit Rules, there are no related cases presently pending it this court.

DATED:  November 23, 2015          Respectfully submitted,

ROBERT J. JAFFE, M.D.
Appellant in Pro Se



MEDICAL BOARD OF CALIFORNIA
**ENFORCEMENT PROGRAM**
20631 VENTURA BLVD., SUITE 201
WOODLAND HILLS, CALIFORNIA 91364
(818) 596-4187



Consumer
Affairs

March 19, 1998

Robert Jaffe, M.D.
22141 Burbank Blvd. Suite 5
Woodland Hills, CA 91367

REGARDING: Case No. 05-94-43374

Dear Dr. Jaffe,

I would like to inform you that we have completed our investigation into the information that was brought forth from Kaiser Foundation Hospital with the above assigned complaint number and we have closed our case because we have found no deviation from the Standard of Care in the Community as related to the information that has been reviewed.

Please let me know if you have any further questions or concerns as I may be contacted directly at the above address or phone number.

Sincerely,

Marc Gonzalez

MARC GONZALEZ
SUPERVISING INVESTIGATOR

MG/rm

JAFFES          EXHIBIT
FOR IDENTIFICATION
WITNESS:
DATE: MARCH 24, 1998
LELIA C. HASUIKE          , CSR



MEDICAL BOARD OF CALIFORNIA
ENFORCEMENT PROGRAM
20631 VENTURA BLVD., SUITE 201
WOODLAND HILLS, CALIFORNIA 91364
(818) 596-4187



May 1, 1998

Robert Jaffe, M.D.
22141 Burbank Blvd. Suite 5
Woodland Hills, CA 91367

REGARDING: Case No. 05-94-43374

Dear Dr. Jaffe,

I would like to inform you that we have completed our investigation into the information that was brought forth from Kaiser Foundation Hospital with the above assigned complaint number and we have closed our case because we have found no deviation from the Standard of Care in the Community as related to the information that has been reviewed. Please be advised the review of your case included the all information contained in charges from Kaiser Foundation Hospital. This is the same information you provided us in a letter of 8/15/94 from Kaiser.

Please let me know if you have any further questions or concerns as I may be contacted directly at the above address or phone number.

Sincerely,

MARC GONZALEZ
SUPERVISING INVESTIGATOR

# DEPARTMENT OF MEDICINE
## INTER-OFFICE MEMORANDUM

DATE:   July 5, 1994

TO:   Robert Jaffe, M.D.

FROM:   Virginia Ambrosini, M.D.  *N.a.*
Chief, Internal Medicine

SUBJECT:   Proctoring May 1994
to July 5, 1994

CC:   David Potyk, MD
Joanne Schottinger, MD

Today I met with Dr. Jaffe to review the latest series of proctoring of his outpatient and inpatient charts. There were 65 outpatient charts that had been reviewed. There were only 4 very minor comments on these charts. None of these were quality problems. There were 16 inpatient charts that had been reviewed during this period of time. 8 of these charts had comments concerning legibility or clarity of the note; however, the management of the patient was thought to be appropriate in all circumstances.

I discussed with Dr. Jaffe today that these charts show considerable improvement. He is using a more appropriate format for his notes, more of his notes are clear to the reviewer, and the care in all cases has been appropriate. He claims that he has made a significant effort to listen to the past comments and improve. I commended him for that and told him I hoped that this would continue.

I am sending a copy of this memo to Dr. Joanne Schottinger as president of the Executive Committee to include this in any review process.

/is

Testimony of Scott McKenzie, MD, Internist – physician representative for Dr. Jaffe at the Hospital's first bylaw provided for Hearing, August 15, 1994: Note the testimony is hand written: the Hospital had not transcribed the Hearing. This hand written testimony was entered into exhibit..

**CLINIC PROGRESS RECORD**

① MEDICAL RECORD NO.    ZIP CODE

PT. STREET ADDRESS

COV REG LXP INJ ALL VIS ADD DRUG

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

GROUP NUMBER SEX DEP BIRTHDATE FAMILY ACCOUNT NO.

| Date / Service | Treatment |
|---|---|
| | **PROCEDURE** |
| | First of all, there is a procedural issue to be addressed. As Dr Jaffe's representative, I request all the 19 medical records listed in the report of the investigative subcommittee. I was told I would receive them on Thursday last. Some records came, but more were promised for early Friday afternoon. Late Friday afternoon, more records were delivered, but many records were still incomplete, or missing, & were to be delivered Saturday. When I left my office Saturday at 5: 7 of the 19 were still incomplete or missing, 5 of which I couldn't review at |

128087 (12/87)

CLINIC PROGRESS RECORD

(2)

| | MEDICAL RECORD NO. | ZIP CODE |
|---|---|---|

PT. STREET ADDRESS

PT. HOME PHONE NUMBER

COV REG LXP INJ ALL VIS ADD DRUG

PT. WORK PHONE NUMBER

GROUP NUMBER SEX DEP BIRTHDATE FAMILY ACCOUNT NO.

| Date / Service | Treatment |
|---|---|
| | In the interest of due process, and Dr. Jaffe's right to adequate representation, we have a choice. We can delete those 5 cases from consideration; or we can reinstate Dr. Jaffe's hospital privileges forthwith, until the executive committee & hospital administration feel fully prepared for this type of proceeding. Dr. Jaffe is happy to accept either approach. |

12-2067 (12/87)

CLINIC PROGRESS RECORD

③

PT. STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

MEDICAL RECORD NO.    ZIP CODE

COV REG LXP INJ ALL VIS ADD DRUG

GROUP NUMBER SEX DEP BIRTHDATE FAMILY ACCOUNT NO.

| Date / Service | Treatment |
|---|---|
| | When Dr. Jaffe approached me to represent him today, I suggested he find someone else. After all, I was the physician who first challenged his practice of using a pre-loaded syringe to inject multiple patients, changing only the needle. However, other potential representatives being away on vacation, & I reluctantly agreed, in the interest of fairness & because I have learned there are at least two sides to every issue. Besides, even his critics offer Dr. Jaffe significant praise — he is |

12-2067 (12/87)



hardworking, extremely attentive
to his patients' needs, conscientious,
very caring, & ~~devoted to~~ dedicated
to the department of Internal Medicine
In fact, when the department is
plagued by multiple unexpected absences,
he has pitched in and volunteered on short
notice more often than any other
Internist, bar none. I know, because
I'm responsible for the call schedule.

**Medical Group**

## CLINIC PROGRESS RECORD

⑤

MEDICAL RECORD NO.     ZIP CODE

PT. STREET ADDRESS

PT. HOME PHONE NUMBER

COV REG LXP INJ ALL VIS ADD DRUG

PT. WORK PHONE NUMBER

GROUP NUMBER SEX DEP BIRTHDATE FAMILY ACCOUNT NO.

| Date / Service | Treatment |
|---|---|
| | Also, the Internal Medicine Department has a formula designed to measure meritorious service. The July '94 average score was 598; Dr. Jaffe's was 660. What does this reflect? The variables include practice size, productivity, number of hospital discharges, L.O.S., etc. My personal favorite ~~is the~~ variable is the number of patients who change doctors, a very strong indicator of patient satisfaction. Dr. Jaffe is consistently among ~~a handful~~ the ~~top~~ best 5 or 10% of ~~po~~ the department. |

12-2007 (12/87)

(6)

Now, regarding the committee report:
Dr. Jaffe has commented on some
conduct issues. Let me proceed to
~~some~~ the specific case reviews. One
reviewer in confidence raised the issue
that we are all human, & may have biases
from up to 17 years of interactions with
Dr. Jaffe. Unfortunately, I'm afraid this
concern has been born out. It's one
thing to say "that's not what I do,"
and quite another to say "that's
the wrong thing to do." In many
cases, the reviewers seemed to
ignore that vital distinction

①

I was able to review 14 case. In my opinion, fully half demonstrated no problem existed. Of the rest, only one showed a major problem. You'll have to hear me out + bear with me because you all have a self-interest in this report; & I know you will have difficulty admitting how badly flawed it is.

Let me start with case

# 777 0969

# 99307006

# 6030 542

# 165 9516

# 4916086

# 8314861

# 6759778

Now let's procede to the cases
where Dr. Jaffe & I concede there
were some problems, but we disagree
as to the magnitude.

# ~~7174143~~

# 10333989

# 7174143

# 1811550

# 2035614

# 7115574

# 2537367

Finally, the one major problem
# 6817084

(7)

As I said before, I was reluctant to represent ~~the~~ Dr. Jaffe in the first place. When I read the subcommitte report, it seemed like a litany of horrors, & I was sure I would find a smoking gun... maybe ~~even an arsenal. I didn't. I found~~ ~~some problems, & Dr. Jaffe readily~~ acknowledges he isn't perfect. But I also found this report to be extremely flawed. How can this be explained? I think part of the answer is that Dr. Jaffe cognitive <u>style</u> is unusual. Rather than linear, step-by-step, "convergi

thinking, Dr. Jaffe displays
"divergent," broad-based thinking
which incorporates a lot of information.
Some of this information turns out
to be irrelevant. Some of it
turns out to be information I
~~personally didn't have in my fund~~
~~of knowledge, nor did his reviewers.~~
such as the information on intra-
articular injections, which is in my
office in _the_ arthritis text, but
I'm ashamed to say I never read that
chapter; and the Lancet, which I
don't subscribe to.

Dr. Jaffe has been accused of being unable to learn; & poor at accepting criticism, which is hard for all of us.

It's time for this <u>committee</u> to do what it has asked of Dr. Jaffe. It is intellectually dishonest to fault him for practices well-supported by ~~the~~ literature; & moreover, <u>we</u> can learn from <u>him</u>, as well as he from us.

One last point. I never expected to be the person making this presentation ~~when I read the report, I thought~~ ~~my presentation~~ Dr. Jaffe would have ~~no option but to beg~~ ~~for forgiveness,~~

I certainly didn't think this was the type of presentation I would make. When I read the report, I thought Dr. Jaffe would have no option but to beg forgiveness. But the facts demanded this accounting, even though I realize injecting myself into this conflict with administration could potentially involve personal & professional costs to me. Thank you for your attention, and hopefully for your openminded consideration.

CLINIC PROGRESS RECORD

PT. STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

MEDICAL RECORD NO        ZIP CODE

COV REG LXF INJ ALL VIS ADD DRUG

GROUP NUMBER SEX DEP BIRTHDATE FAMILY ACCOUNT NO.

| Date / Service | Treatment |
|---|---|
| | |

# 6759778 Frazier Beverly

Issue: Excessive number of steroid joint injections for this patient (greater than 75 in one year)

Response: First, the 75 injections occurred over 7 years not one. Second, J.L. Hollender a world expert on arthritis writes the following in his textbook:

I was surprised to learn that Dr Taffe's project was correct, although unconventional in our medical center. His fund of knowledge. The criticism of the outside reviewer is that incorrect.

Arthritis & Allied Conditions  Leaf Febyer  1985
Chapter 34  Arthrocentesis Technique

RESP 937

CLINIC PROGRESS RECORD

STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

| Date / Service | Treatment |
|---|---|
| | # 7115574    Rogers David |
| | Issue: Positive blood cultures & CHF care. |
| | Response: Limited by lacks of Dr. Jaffe's E.R. notes & D.C. form; however the patient at worst had transient bacteremia rather than septicemia, and Dr. Jaffe's assessment of the degree of illness was correct. |
| | I base this assessment on the observation that the patient returned for admission two days later without benefit of antibiotics and was afebrile, had negative repeat blood cultures, no leukocytosis & symptoms of only tiredness & weakness. He was released the following day on oral antibiotics which were probably unnecessary. |
| | However, Dr. Jaffe agrees that positive blood cultures warrant direct patient re-evaluation, which is better than telephone follow-up. |

12-2087 (12/87)

RESP 931

**CLINIC PROGRESS RECORD**

STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

| Date / Service | Treatment |
|---|---|
| | # 10333989    Martinez, Jose |
| | Issue: Excessive prescribing of codeine |
| | Response: 4/3/94 indicates agreement |
| | to reduce amounts prescribed, |
| | & visit 6/6/94 proves his |
| | practice changed. Dr Jaffe |
| | of course was motivated only |
| | in trying to relieve suffering |

RESP 932

**CLINIC PROGRESS RECORD**

PT. STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

| Date / Service | Treatment |
|---|---|
| | # 6030542 Ryback Betty |
| | Issue: Recommendation of coumadin in B?patient c paroxysmal atrial fibrillation. |
| | Response: The atrial fibrillation guideline recommends coumadin in patients with p.a.f associated with mitral valve disease, which the patient has, or with more than three episodes/year which frequency was suggested by the patient's symptoms. Professor Graves of the University of Florida fully supports Dr. Jaffe's recommend in his letter |

12-2087 (12/87)

RESP 933

**CLINIC PROGRESS RECORD**

PT. STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

| Date / Service | Treatment |
|---|---|

# 181/550  Crenshaw, William

Issue: Poorly controlled diabetic was changed from insulin to glucotrol

Response: Neither insulin nor oral agents are the key to treatment. Dietary compliance & weight reduction & monitoring were appropriately instituted by Dr. Jaffe. The clinic visit 12/13 seemed to indicate success with a chemstrip of 140. Unfortunately the 6 week delay in the seeing Laurie Allen may have compromised Dr. Jaffe's plan & the patient failed to follow-up with planned lab tests.

12-2037 (12/87)

RESP 935

**CLINIC PROGRESS RECORD**

PT. ___ET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

| Date / Service | Treatment |
|---|---|
| | # 8314861 Reilly, John |
| | Issue: Failure to take action for a clearly abnormal blood sugar |
| | Response: Dr Jaffe overlooked the blood sugar, & was unaware of the result without notifying the physicians the laboratory changed its printing procedure and printed the result on the reverse page which formerly was blank |

RESP 936

CLINIC PROGRESS RECORD

STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

| Date / Service | Treatment |
|---|---|

# 283564   Stiefvater, Sharon

Issue: Failure to obtain podiatry
or orthopedic consultation
& evaluate for osteomyelitis)
Failure to evaluate as proteinuria
& monitor diabetic complications.

Response: Pt had a 3 month hospital
stay for osteomyelitis of the toe
in 1980 with residual ulcer persisted
which caused a wound/ft amputation
were complete. Multiple x-rays
since 1981 have shown demonstrated
clinical stability & repeated
work ups. Podiatry follow-up
did not exist for the vast
majority of this course. One
reviewer faulted Dr. Jaffe
for not obtaining serum protein
studies but they had performed
only 4 months prior. The
reviewer also faulted him for
doing minor wound care & trimming
without a consent form, but
neither does the Podiatry Service.
Regarding diabetic complications
the patient was followed closely by

12-2005I (12/87)

CLINIC PROGRESS RECORD

PT. STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

| Date / Service | Treatment |
|---|---|
| | # 917 4143 Zee, Branco |
| | |
| | Issue: Pt. on coumadin for chronic atrial fib fell & fractured ribs. Whether to D.C. Coumadin was not addressed in 77 yr old man c macular degeneration & hearing loss |
| | |
| | Response: It would have been preferable to clearly document the issue. However the primary physician Dr. Hodge a cardiologist at UCLA was the appropriate person to make this decision & Dr. Hodge was actively involved with the case. The patient was seen at UCLA following the fracture, & no med change medication change was recommended. Finally this supposedly feeble old man is actively practicing medicine. Also although gait testing as such was not documented in the hospital, Dr. Zee wrote a letter confirming it was done before D.C. The drop in Hb from 13.6 to 12.9 is well within laboratory variation in my experience |

**CLINIC PROGRESS RECORD**

| | MEDICAL RECORD NO. | ZIP CODE |
|---|---|---|

PT. STREET ADDRESS

COV REG LXP (NL) ALL VIS ADD DRUG

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

GROUP NUMBER SEX DEP BIRTHDATE FAMILY ACCOUNT NO.

| Date / Service | Treatment | |
|---|---|---|
| 1033 3989 | MARTINEZ, JOSE | p 5 |
| 165 9516 | PEDERSON, PALMER | p 4 |
| 175 1476 | CUERNA, RUTH | p 4 |
| 181 1550 | CRENSHAW, WILLIAM | p 3 |
| 253 7367 | HAIN, EDWIN | p 4 |
| 283 5614 | STIEFVATER, SHARON | p 3, 1 |
| 319 7473 | MILLER, MILTON | p 3, 19 |
| 499 0715 | STONEBROOK, ERNEST | p 4 |
| 491 6086 | DUNCAN, NICHOLAS | p 3 |
| 543 5590 | LATER HAROLD | p 15 |
| 6030542 | RYBACK, BETTY | p 4, 23 |
| 6759778 | FRAISER, BEVERLY | p 5, 22 |
| 6817084 | WESLEY, CHARLES | p 4, 21 |
| 711 5574 | ROGERS, DAVID | p 3, 2 |
| 717 4143 | ZEL, BRANKO | p 4, 2 |
| 721 9696 | MOROSOFF, WILLIAM | p 16, |
| 777 0969 | ANGUIANO, DENISE | p 4 |
| 831 4861 | REILLEY, JOHN | p 3 |
| 9930 7006 | SALCEDO, VICENTE Alexander, Samp |

12-1057 (12/87)

STREET ADDRESS

PT. HOME PHONE NUMBER

PT. WORK PHONE NUMBER

MEDICAL RECORD NO.     ZIP CODE

COV. REG. LXP. INJ. ALL VIS. ADD. DRUG

GROUP NUMBER SEX DEP. BIRTHDATE FAMILY ACCOUNT NO.

| Date / Service | Treatment |
|---|---|
| | # 6759778  Frazier Beverly |
| | Issue: Excessive number of steroid joint injections for this patient (greater than 75 in one year) |
| | Response: First, the 75 injections occurred over 7 years not one. Second, John Hollander, a world expert on arthritis, writes the following in his textbook: |
| | I was surprised to learn that Dr. Taffer was correct, although unconventional in our medical center. His fund of knowledge. The criticism of the outside reviewer is incorrect. |
| | Arthritis & Allied Conditions, Leo & Febiger, 1985 Chapter 39 Arthrocentesis Technique |

## PROOF OF SERVICE PETITION
## FOR APPELLANT'S OPENING BRIEF

I, the undersigned, hereby declare as follows:

I am over eighteen years of age, and not a party to the within cause. I am a resident of the County of Los Angeles, State of California. My business address is 22139 Burbank Blvd., #5 Woodland Hills, California 91367.

On November 28, 2015, I served the foregoing APPELLANT'S OPENING BRIEF on the interested parties named below by depositing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail in the city of Los Angeles, California:

Donald B. Verrilli, Jr., Solicitor General,
US Department of Justice, Office of the Solicitor General
950 Pennsylvania Ave. NW
Washington, DC 20530

Attorney of record for Respondents:
Robert I. Lester, Assistant U.S. Attorney
300 North Los Angeles St., Rm 7516,
Los Angeles, Ca 90012
Facsimilie (213) 894-7819

1